IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


MARY JO MONTGOMERY,

        Plaintiff,

v.                                                CIV 02-1414 KBM/WWD

THE STATE OF NEW MEXICO, et al.,

        Defendants.


# **MEMORANDUM OPINION AND ORDER**

      Plaintiff Mary Jo Montgomery is the former Chief Clerk of Sierra County Magistrate Court. Defendants Kathy Clark, Teresa Johnson and Melissa Torres were Plaintiff's subordinates. Following a deteriorating working environment, a disciplinary action and an investigation, Defendant Magistrate Tom Pestak recommended that Plaintiff be dismissed for a number of reasons. The Director of Defendant Administrative Office of the Courts ("AOC") terminated Plaintiff's employ.

      Plaintiff filed this action, alleging violations of her First Amendment, procedural due process, and substantive due process rights under 42 U.S.C. § 1983, as well as conspiracy and breach of contract. *See Doc. 1.* Counts I and II of Plaintiff's Complaint comprise her First Amendment and due process claims, Count III contains the conspiracy claim, and Count IV contains the breach of contract claim. The various counts are broadly-worded, do not specify whether her theory of recovery lies under § 1983 or state law, and apparently seek to hold all

Defendants liable under each theory. However, Plaintiff's responses to the motions clarify the situation.

Defendants move for summary judgment on the merits of the due process claims and for qualified immunity on all of the federal claims. *E.g., Doc. 64* at 4. They argue that Counts I and II are brought solely against the AOC and Judge Pestak and that the AOC has Eleventh Amendment immunity. Plaintiff does not disagree with this interpretation. As a practical matter then, the First Amendment and due process claims are brought solely against Judge Pestak, and only in his individual capacity. *See Doc. 1* at 6; *Doc. 64* at 2; *Doc. 77* at 1.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. This matter is before the Court on Defendants'[1] three motions for summary judgment that collectively encompass all of Plaintiffs' claims. *See Docs. 59, 60, 63.* For the reasons below, I find that the federal claims should be dismissed. I further decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c). Accordingly, the pretrial conference and jury trial set for June 30, 2004 and August 9, 2004, respectively, are vacated.

## I.  Summary Judgment Standard

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must "view the evidence and draw any inferences in a

---

[1] Defendants join in different combinations on the various motions. To simplify, I just use "Defendants."

light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

>  Indeed, summary judgment
>
>> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Under *Saucier v. Katz,* if a defendant raises qualified immunity as the basis for summary judgment, the burden shifts to the ***plaintiff*** to show two things: (1) a violation of a constitutional right, and (2) that the violated right was clearly established as of the date of the offending conduct. The analysis of the two prongs is based on Plaintiffs' allegations and must be conducted in sequential order. 533 U.S. 194, 201-02 (2001); *see also Roska v. Peterson,* 328 F.3d 1230, 1239 (10th Cir. 2003); *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1312 (10th Cir. 2002); *Holland v. Overdorff,* 268 F.3d 1179, 1185-86 (10th Cir. 2001), *cert. denied,* 535 U.S. 1056 (2002).

In the Tenth Circuit, the plaintiff's burden in this context is described as "heavy" notwithstanding viewing the evidence favorable to them: "'[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" *Holland,* 268 F.3d at 1186 (quoting *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001)). In the event a plaintiff successfully meets his or her burden under the two-part

*Saucier* test, "then the burden shifts back to the defendant, who must prove that 'no genuine issues of material fact' exist and that the defendant 'is entitled to judgment as a matter of law.'" *Olsen,* 312 F.3d at 1312 (internal citation omitted).

## II.  Analysis Of Federal Claims

Defendants move for summary judgment on the merits of the due process claims and for qualified immunity on all of the federal claims. *E.g., Doc. 64* at 4.  They argue that Counts I and II are brought solely against the AOC and Judge Pestak, and Plaintiff does not disagree with this interpretation.  Moreover, Plaintiff concedes that the AOC is entitled to Eleventh Amendment immunity.  Thus, the First Amendment and due process claims analysis need address only those claims brought against Judge Pestak in his individual capacity.  *See Doc. 1* at 6; *Doc. 64* at 2; *Doc. 77* at 1.

### *A.  Alleged First Amendment Violation*

Plaintiff maintains that she had a glowing work history which only became tarnished because Judge Pestak believed she was working for his political rival.  Plaintiff's one meeting with Judge Pestak's "political opponent" forms the basis of her First Amendment association claim.[2]  According to Plaintiff, this meeting merely involved a public employee assisting a member of the public in obtaining public court records, and she asserts that she did not engage in any "political" activity during this meeting or otherwise.  *E.g., Doc. 78* at 4-6.

Plaintiff's theory of recovery thus rests on the assertion that Judge Pestak mistakenly ***perceived*** her as engaging in political support for his rival at the meeting.  *E.g., id.* at 12.  Indeed,

---

[2]  Plaintiff's response establishes that she is not pursuing a First Amendment "speech" theory.  Her First Amendment claim lies solely on an "association" theory.  *Doc. 78* at 11.

she has produced some evidence that, when read in the light most favorable to Plaintiff, could support such a conclusion. *See Doc. 76,* Exh. 17 at 3 (judge notes indicating that Plaintiff's meeting with "MY POLITICAL OP[P]ONENT -- IT GIVES THE APPEARANCE OF IMPROPRIETY – I have no problem with her supporting the other candidate but not on the court[']s time – it must be done on her own personal time."); *See also Doc. 87* at 3 (quoting judge's concern about appearance of impropriety and citing judicial personnel rule prohibiting employees from engaging in political activity while on duty).

If, as Plaintiff contends, the meeting constituted nonpolitical assistance between a public employee and a member of the public, it did not involve the type of intimate relationships that the First Amendment protects. Nor did the meeting involve a political "association" for the purpose of engaging in protected First Amendment activities, and she would thereby fail on an essential element of the claim. Without citation to any authority, Plaintiff simply declares that a defendant's intent to interfere with a perceived protected relationship is sufficient.

I have found only one decision that arose under similar facts, and it held that a First Amendment "perceived association" claim of this sort is not actionable. *See Busey v. Board of County Commissioners,* 277 F. Supp. 2d 1095, 1107-09 (D. Kan. 2003). The *Busey* opinion thoroughly discusses why the associational interest implicated in that case was not in fact protected under the First Amendment.

In what appears to be an alternative holding, the *Busey* court found that the plaintiff "must demonstrate that he was subjected to discrimination based on ***his*** political loyalty, affiliation or views. Merely alleging that he had an undefined association with a politically controversial third party falls short of this requirement." *Id*. at 1110 (emphasis in original). The *Busey* court relied

5

on only one case, *Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49 (1st Cir. 1990), when it rejected Busey's argument "that a perceived political loyalty is a protected act of association." *Busey*, 277 F. Supp.2d at 1109.[3]  Yet the First Circuit in *Correa-Martinez* specifically declined to address the issue for which it was cited in *Busey*.  In Footnote 7 of the decision, the court expressly states

> Appellant has not claimed that, although he was in fact nonpolitical, defendants forced him to resign because they (mistakenly) thought he was a member of the opposition party.  We express no opinion, therefore, on whether a discharge which arises not out of an employee's political activity, but out of the government employer's belief, wrongly held, that the employee was in league with the opposition party, would be actionable under the rubric of the first amendment.

*Correa-Martinez*, 903 F.2d at 58.

---

[3]  In that First Circuit case, an administrative judicial employee brought a lawsuit against three judges "alleging that he had been forced to resign because of his close relationship with the former administrative judge with whom defendants had personal and political differences." *Id.* at 1109.  In *Correa-Martinez*, the First Circuit found that

> plaintiff does not allege that his politics, his ideology, or his advocacy of political goals led to his downfall. . . .  Refined to bare essence, then, plaintiff does not claim that defendants discriminated against him on the basis of his political beliefs or advocacy of ideas – discrimination which would implicate an interest shielded by the Bill of Rights.  Rather, he asserts only that defendants had "personal and political differences" with an unrelated individual, Judge Padilla (the jurist formerly in charge of the Guayama Judicial Region), and discriminated against him (plaintiff) because of his "close association" with Judge Padilla.  We do not think that such discrimination, if it existed, impinged upon a constitutionally protected right.

*Correa-Martinez*, 903 F.2d at 57.

6

In the briefing before me, Plaintiff merely assumes that violation of a perceived protected association right is compensable. Defendants simply deny that the facts according to Plaintiff implicate her First Amendment rights because this case doesn't fit within the well known and accepted elements for a viable First Amendment claim. It appears that neither side performed a comprehensive evaluation of policy reasons or ramifications should the Court rule that a misperception of protected activity suffices in a case such as this. Fortunately I need not rely on the paucity of reasoning nor the limited case law, because for the reasons stated in Section C, Judge Pestak did not ***cause*** any violation of civil rights.[4]

### B. Procedural Due Process

Plaintiff's Complaint does not mention what procedural process she was denied. *See Doc. 1* at 6-7. It is undisputed that regarding her termination: (1) she received notice of the proposed action and requested and received a pre-termination proceeding where she was represented by counsel; and (2) was afforded a post-termination hearing which she declined. *See Doc. 62* at 4, 10.[5] Plaintiff's only assertion regarding the "process" she was denied appears in her response, where she complains that six of the eight asserted bases for terminating her

> are undated, and two admittedly go back to the beginning of 2001
> or earlier – one and one-half years. The predate a meeting with
> Amy Planck in March 2001 to clear the air, they predate the

---

[4] I make no assessment whether Plaintiff's assertions about the judge's misperceptions could give rise to a viable state law theory of recovery.

[5] The "facts" regarding the pre-termination hearing were not mentioned in Defendants' recitation of the undisputed facts and appear in the body of their memorandum. Nonetheless, the fact is not disputed and some of Plaintiffs's exhibits demonstrate her challenge to the asserted bases for dismissal prior to the dismissal. *See Doc. 76,* Exhs. 17, 22-27; *Doc. 62,* Exhs. C-D. Furthermore, in her response, Plaintiff does not dispute the assertion that she was afforded a pre-termination hearing as well as a post-termination hearing. *See id.* at 2, 11-12.

7

>discipline Plaintiff received for the traffic ticket, and they predate
>her superlative evaluation in late June of 2001. The allegations
>were so old, especially the ones regarding her time, that it was
>impossible for Plaintiff to respond adequately. Accordingly, these
>accusations lack the procedural due process element of fair notice.

*Doc. 76* at 11.

She argues that the "dimensions of procedural due process are ***not grounded in the [federal] Constitution,*** but in state law," specifically the state personnel rules regarding progressive discipline documentation, which the employee can request to be removed after one year. *Id.* (emphasis added). Plaintiff asserts that by "failing to follow this [state regulation], which is designed to give the employee fair notice and a chance to correct performance problems; by accumulating unspoken grievances for months and years, then handing them out all at once with no prior warning, Defendants denied Plaintiff the due process ***embodied in these rules.***" *Id.* at 12 (emphasis added).

It is well-settled, however, that violations of state law do not give rise to liability under § 1983. Having conceded that state law is the sole basis for this claim and that she was afforded all she was due under the federal Constitution, Plaintiff fails to set forth a cognizable federal constitutional claim for violation of due process. As the Tenth Circuit recently reiterated, for example:

>Throughout this litigation there have been repeated references to,
>and apparent reliance on, the Faculty Manual's procedural rules.
>But in deciding whether a state has violated a person's
>constitutional right to procedural due process, we should pay no
>attention to whether the state has complied with procedures
>mandated by state law. To be sure, state law determines whether a
>person has a property right. But once the property right is
>established, it is purely a matter of federal constitutional law
>whether the procedure afforded was adequate. As the Supreme

8

> Court said in *Loudermill,* 470 U.S. at 541: "[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the [state] statute." (internal citation and quotation marks omitted).

*Hulen v. Yates,* 322 F.3d 1229, 1246-47 (10th Cir. 2003); *see also id.* at 1249 ("the Faculty Manual's allocation of the burden is irrelevant to the constitutional question. *See Loudermill,* 470 U.S. at 541."); *accord Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) (Police officer alleged procedural due process violation when demotion in rank did not comply with the procedures guaranteed by his collective bargaining agreement; court held that "the Constitution does not require that each individual receive the procedural guarantees provided for by the instrument which bestows a property interest."); *see also Levitt v. Univ. of Texas,* 759 F.2d 1224, 1229 (5th Cir. 1985) ("Even if the University failed to follow its own rules, it nevertheless gave [the professor] all the process to which he was entitled under the Constitution.") (*cert. denied,* 474 U.S. 1034 (1985)). There is no basis for departing from this precedent.

Accordingly, Plaintiff fails to state a claim for denial of procedural due process as a matter of federal constitutional law, and Defendant Pestak is entitled to summary judgment as a matter of law on the claim. Consequently, no further qualified immunity analysis is needed. I make this ruling solely as a matter of federal law, and by so ruling, make no factual or legal determination as to state law.

### C. Substantive Due Process

Plaintiff also asserts that her "property interest and liberty interest in continued employment and in her good name and reputation" was violated by the defendants. *Doc. 1* at 6, 7. Defendants argue that the evidence demonstrates that Plaintiff's termination was neither

9

arbitrary, capricious or irrational, and also that Plaintiff waived any redress under § 1983 by opting not to participate in the post-termination hearing and electing to file suit instead. They rely on *Garcia v. State of N.M. Office of the Treasurer,* 959 F. Supp. 1426 (D.N.M. 1997) for the waiver argument. I agree that the claim fails for several reasons.

Assuming a protected property interest, "[s]ubstantive due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis." *Curtis v. Oklahoma City Public Schools Bd. of Educ.,* 147 F.3d 1200, 1215 (10th Cir. 1998) (internal quotation and citation omitted). That threshold is not high. "'The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.'" *Id.* (quoting *Bishop v. Wood,* 426 U.S. 341, 350 (1976)). The detailed letter, in which the AOC Director set forth reasonable grounds for her termination decision after investigation and hearing both sides of the matter, satisfies this standard in my view. Nor does the decision to terminate Plaintiff's employ for those reasons shock the judicial conscience. Accordingly, I find no federal constitutional violation and qualified immunity in favor of Judge Pestak.[6] Again, I make this

---

[6] *See, e.g., Hennigh v. City of Shawnee,* 155 F.3d 1249, 1257 (10th Cir. 1998) ("Assuming, arguendo, that Plaintiff did have a fundamental property interest in his rank which was subject to substantive due process protection, we conclude that Defendants' termination of that interest was not arbitrary or without a rational basis. . . . Defendants acted to address their potential liability under federal statutes prohibiting the type of conduct allegedly committed by Plaintiff. This is not an irrational basis for discipline."); *Garcia v. Shanks,* 221 F.3d 1351 (10th Cir. 2000) (unreported) ("Even Garcia admits that, at the very least, media accounts of his criminal conduct caused 'embarrassment' to the department of corrections. . . . Garcia's actions, and the aftermath of his actions, can be characterized as conduct which adversely affected the department and Garcia's ability to perform his duties, in violation of the department's code of ethics. Thus, it cannot be said that the decision to discharge him was arbitrary, capricious, or without a rational basis. Garcia's substantive due process rights were not affected by the termination of his employment."); *Babbar v. Ebadi,* 216 F.3d 1086 (10th Cir. 2000) (unpublished) (stating that to prevail on substantive due process claim, professor whose employment was terminated must "satisfy the shock the conscience standard" and to do so "must do more than

ruling solely as a matter of federal law, and by so ruling, make no factual or legal determination as to state law.

Another major reason supports the entry of summary judgment on the substantive due process claim and all of the federal claims against the defendant. Plaintiff seeks to hold Judge Pestak liable for the termination decision because his recommendation allegedly was the product of his retaliatory motives. However, it is undisputed that the decision to terminate was in fact made at the AOC-level, and there is no evidence that the director or the AOC served as a mere rubber stamp of the recommendation. Thus, Plaintiff fails to come forth with sufficient evidence from which a jury could reasonably conclude that Judge Pestak ***caused*** any constitutional violation.

Even if Plaintiff had sought to hold the actual decision-maker accountable by suing the AOC Director in her individual capacity, there is no basis in the record for attributing any alleged improper motive on the part of Judge Pestak to the Director.[7] And again, any suit against the

---

show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. . . . Rather, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.") (internal quotations and citation omitted); *Herrera v. City of Albuquerque,* 198 F.3d 258 (10th Cir. 1999) (unpublished) ("The City terminated Herrera for refusing a drug test and for appearing to be under the influence of alcohol while working. The City's termination of Herrera was not arbitrary, capricious, or without a rational basis. Herrera's substantive due process rights were not violated.").

[7] The only places in the record I have found that indicate Plaintiff even raised the issue of retaliation to the decision-maker is one paragraph and one sentence of a lengthy document Plaintiff wrote in her own defense against the proposed dismissal. Those portions state the judge was "angry" and "insecure" due to Plaintiff's one meeting with his political rival, and that his "lack of sudden non-support of [Plaintiff] is obviously political." By these statements, I believe she was trying to convey the notion that, contrary to his earlier support against complaints by the subordinates and threatened termination by the AOC, after he learned of the meeting, the judge "suddenly" stopped advocating for Plaintiff vis-a-vis the AOC and the subordinates. *Doc. 76,*

AOC Director in her official capacity would be against the State and the Eleventh Amendment would preclude a § 1983 claim in a federal forum. Moreover, because the AOC is an arm of the State, even a suit brought in state court against the Director in her official capacity would fail to state a viable claim. Neither a State nor a state actor acting in his official capacity is a "person" subject to liability for monetary damages under 42 U.S.C. § 1983. Will v. Michigan Department of State Police, 491 U.S. 58 (1989).

Finally, it is not yet settled whether an interest in continued public employment is entitled to protection under substantive due process beyond what is afforded under procedural due process. *E.g., Hinsdale v. City of Liberal,* 19 Fed. Appx. 749, 768 (10th Cir. 2001) ("our circuit

---

Exh. 22 at 2, 5.

The Director's termination letter, again which details the subsequent evidence the Director received and the independent investigation she undertook, nowhere mentions that Plaintiff or her attorney suggested retaliation on the part of the judge was the basis for his recommendation. As such, this case would be virtually identical to the situation to the Curtis case where the Tenth Circuit held:

> The record indicates that Plaintiff did not himself inform the Board, either at the pretermination hearing or in writing, that he believed the recommendation was retaliatory. There is no evidence in the record that the Board was otherwise informed of Plaintiff's belief that his termination was in retaliation for specific protected activity but chose not to credit Plaintiff's belief or conduct any investigation into the allegations. . . . There is also no evidence Board Members themselves believed the termination recommendation was retaliatory, but decided nevertheless to adopt the recommendation. . . . Because there was no evidence supporting Plaintiff's claim that the Board acted with deliberate indifference to his constitutional rights, the district court properly granted summary judgment to the Board on Plaintiff's § 1983 claim.

*Curtis,* 147 F.3d at 1616. Thus, even if the Director were so named, she would also be entitled to judgment as a matter of law based upon the undisputed evidence.

12

precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process.") (internal quotations and citations omitted). Since the law remains unclear, even if a substantive due process violation occurred, qualified immunity would be available. I further agree with Defendants that by foregoing the post-termination hearing, Plaintiff waived any claim that she was deprived a property or liberty interest under the reasoning in *Garcia.* *See* 959 F. Supp. at 1431.

For all of these independent reasons, Plaintiff's substantive due process claim will be dismissed.

### *D. Conspiracy*

Defendants move for summary judgment on the conspiracy claim, citing only state law conspiracy principles. *See Doc. 61* at 4. Plaintiff's response also cites New Mexico state law as the source of her claim, but contains two other citations. *See Doc.80* at 9-12. She cites *Erickson v. Board of County Commissioners,* 801 F. Supp. 414 (D. Colo. 1992), which only involved a state law claim of conspiracy based on Colorado law. *See* 801 F. Supp. at 423. She also cites *Moran v. Clarke,* 296 F.3d 638 (8th Cir. 2002), which is based on federal substantive due process law. *See* 296 F.3d at 647-48. Therefore, I will assume that Plaintiff is seeking recovery based upon a conspiracy claim under state law and under § 1983.

The factual premise underlying Plaintiff's conspiracy claim is that her subordinates ("the clerks") secretly "manufactured" evidence showing that Plaintiff misrepresented her time at work. The clerks did so by compiling a coded calendar of Plaintiff's hours, and it is undisputed that they did not involve Judge Pestak in this endeavor. Instead, they kept their undercover compilation a secret from him too, until they learned that he was angry at Plaintiff for meeting with his political

13

rival.

According to Plaintiff, upon learning of Judge Pestak's anger and while Plaintiff was on vacation so she couldn't defend herself, the clerks put their conspiracy into action by taking the results of their "investigation" to him. Plaintiff contends that by forwarding the subordinates' accusations to the AOC without consulting Plaintiff, Judge Pestak thus "joined the conspiracy." *See Doc. 80* at 1-2. Specifically, "[e]ven though he knew they had motive to falsely accuse her, even though he knew she worked long, extra hours, even though he knew she had compensation time coming for that overtime, he joined the conspiracy, and without ever talking to her, forwarded their allegations to the [AOC]." *Id.* at 2. The "conspiracy" Plaintiff thus identifies is the compilation of evidence by her subordinates. She cites *Moran* for the proposition that manufacturing false evidence constitutes a conspiracy and also violates substantive due process. I disagree under the facts of this case.

Only the subordinate clerk defendants are alleged to have "manufactured" evidence. Although they were state employees, in the context of this case, they are not "state actors" for § 1983 purposes. Rather, the actions of disgruntled employees in compiling what they believe is proof of improper conduct on the part of their supervisor amounts to purely private conduct that has no relationship to their status as state employees. In other words, the subordinates did not exercise any power that they only possessed by virtue of authority under state law. "[T]here must be a real nexus between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." *Nieto v. Kapoor,* 268 F.3d 1208, 1217 (10th Cir. 2001) (internal quotations and citation omitted). That nexus is utterly lacking here. Neither Plaintiff's bare allegations of state action nor description of the action suffice to meet her burden

of alleging and showing state action.[8]

As for Judge Pestak:

> A § 1983 conspiracy claim may arise when a private actor conspires with [a] state actor to deprive a person of a constitutional right under color of state law, *Dixon v. City of Lawton,* 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990), [but] the pleadings ***must specifically present facts tending to show agreement and concerted action,*** *Hunt v. Bennett,* 17 F.3d 1263, 1268 (10th Cir. 1994) [*cert. denied,* 513 U.S. 832 (1994)], ***and must demonstrate a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.*** *Snell v. Tunnell,* 920 F.2d 673, 702 (10th Cir. 1990) [*cert. denied,* 499 U.S. 976 (1991)].

*Roberson v. Pinnacol Assur.,* ___ Fed. Appx. ___, 2004 WL 1059799 (10th Cir. 2004) (emphasis added and internal quotations omitted).

By Plaintiff's own allegations, however, the judge was not involved in any conspiracy to manufacture evidence. Rather, Plaintiff alleges that the "conspiratorial" connection took place when the judge forwarded on the information about suspected "time card fraud" to the AOC. Plaintiff does not specifically identify the nature of the conspiracy or how Judge Pestak and the clerks conspired, as is her burden. Presumably she means to infer that they shared "the general conspiratorial objective" to have Plaintiff fired, since she claims that "[b]ut for this combination among the Defendants, Plaintiff would not have been terminated." *Doc. 80* at 2. Yet, conclusory allegations such as these cannot support a claim of conspiracy under § 1983, and the causal

---

[8] *See e.g., E.F.W. v. St. Stephen's Indian High School,* 264 F.3d 1297, 1305-06 (10th Cir. 2001); *David v. City and County of Denver,* 101 F.3d 1344, 1353 (10th Cir. 1996), *cert. denied,* 522 U.S. 858 (1997); *Jojola v. Chavez,* 55 F.3d 488, 493 (10th Cir. 1995); *compare Giron v. Corrections Corp. of America,* 14 F. Supp. 2d 1245, 1251 (D.N.M. 1998) (rape of inmate by correctional officer constitutes conduct under state law "because he exercised coercive authority over her through his employment, and because he used his employment to gain access to her – he used his state-conferred authority as a corrections officer to accomplish the deed.").

inference she asks the Court to draw is too attenuated to support her claim.

> Professor Tonkovich presents us with nothing more than conclusory allegations. We do not think it is reasonable to infer, for example, that because certain Law School faculty members met with certain administrators during the investigation, they were conspiring with one another and with the Hearing Committee who ultimately found against Professor Tonkovich.

*Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998).

Therefore, to the extent Plaintiff is claiming conspiracy under § 1983, the claim is not actionable against the subordinate defendants, and she fails to state a claim against Judge Pestak who, consequently, would also be entitled to qualified immunity. Again, I base my decision solely on federal law.

### *E. Supplemental Jurisdiction*

All of Plaintiff's federal claims, the only basis for jurisdiction for this suit, have been dismissed. Accordingly, I exercise my discretion to decline to exercise supplemental jurisdiction over the remaining state claims under 28 U.S.C. § 1367(c) and dismiss them without prejudice, so that they may be brought in state court.

Wherefore,

**IT IS HEREBY ORDERED** that Defendants' motions for summary judgment are GRANTED IN PART AND DENIED IN PART *(Docs. 59, 60, 63).* The federal claims are dismissed with prejudice and the state claims are dismissed without prejudice so that Plaintiff may refile in state court.

**IT IS FURTHER ORDERED** that the jury trial set for August 9, 2004, as was the pretrial conference previously set for June 30, 2004, are VACATED, and that a final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.